UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LILIBETH GOMEZ, Individually and for Others Similarly Situated, | Case No. 4:25-cv-03749 |
| v. | Jury Trial Demanded |
| 33/40 HOUSTON, LLC d/b/a THE VAULT GENTLEMEN'S CLUB, MIKE MEALEY, and DOES 1 through 50 | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Lilibeth Gomez ("Gomez") brings this collective action lawsuit to recover unpaid minimum wages, overtime wages, compensatory damages, and other damages from Defendants 33/40 Houston, LLC d/b/a The Vault Gentlemen's Club, Mike Mealey, and Does 1 through 50 (collectively, "The Vault") under the Fair Labor Standards Act ("FLSA") or, in the alternative, the Texas Minimum Wage Act ("TMWA").

2.      The Vault employed Gomez as one of its Dancers (defined below).

3.      The Vault classifies Gomez and the other Dancers as "independent contractors" and does not pay them any wages.

4.      Rather, The Vault requires Gomez and the other Dancers to pay **The Vault** for the privilege of working at its exotic dancing establishment.

5.      Gomez and the other Dancers earn their living from their work at The Vault through tips received from The Vault's customers.

6.    The Vault further requires or otherwise encourages/expects Gomez and the other Dancers to share their tips with individuals who do not usually earn tips from customers, including managers, DJs, and security personnel.

7.    The Vault's uniform misclassification scheme violates the FLSA and/or the TMWA by depriving Gomez and the other Dancers of minimum wages for all hours worked up to 40 in a workweek.

8.    The Vault's uniform misclassification scheme violates the FLSA and/or the TMWA by depriving Gomez and the other Dancers of overtime wages for all hours work over 40 in a workweek.

## Jurisdiction & Venue

9.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10.    This Court also has supplemental jurisdiction over the Texas state law claims, which are brought in the alternative, pursuant to 28 U.S.C. § 1367 because the claims arise out of a common nucleus of operative facts.

11.    This Court has general personal jurisdiction over The Vault because The Vault's principal place of business is located in Texas.

12.    Venue is proper because The Vault is headquartered in Houston, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## Parties

13.     Gomez worked for The Vault as an exotic dancer from approximately February 2025 to July 2025.

14.     Gomez first started working at this club (then called "Vivid") off-and-on as early as 2014. Upon information and belief, the club was re-named "The Vault" sometime in the past year or so.

15.     Throughout her employment, The Vault misclassified Gomez as an independent contractor to avoid paying her minimum wages and overtime wages.

16.     Instead, The Vault paid Gomez no wages and charged her a fee (called a "house fee") in order to work on a given night.

17.     Gomez earned income from her work at The Vault solely through tips from The Vault's customers.

18.     Gomez's written consent is attached as **Exhibit 1**.

19.     Gomez brings this collective action on behalf of herself and other similarly situated dancers/entertainers who worked for, or on behalf of, The Vault, were classified as "independent contractors" rather than as employees, and were not paid any wages.

20.     The putative collective of similarly situated employees is defined as:

> **All current and former dancers/entertainers who worked for The Vault Gentlemen's Club and were classified as independent contractors at any time during the past 3 years through final resolution of this Action (the "Dancers").**

21.     Defendant 33/40 Houston, LLC is a Texas limited liability company, doing business as The Vault Gentlemen's Club, with its principal place of business located in Houston, Texas.

22.     Defendant 33/40 Houston, LLC may be served through its registered agent: **Albert T. Van Huff, Monshaugen & Van Huff P.C., 1225 North Loop West, Suite 640, Houston, Texas 77008**.

23.     Defendant Mike Mealey is an individual residing in Texas.

24.     Defendant Mealey manages the Dancers at The Vault Gentlemen's Club.

25.     Defendant Mealey may be served with process at his usual place of business: The Vault Gentlemen's Club, located at 2618 Winrock Boulevard, Houston, Texas 77057, or wherever he may be found.

26.     Does 1 through 50 are individuals who manages, supervised, and oversaw the hiring and working conditions of Gomez and the Dancers during the relevant time period. The names and identities of these individuals are currently unknown, but these Doe Defendants were responsible for implementing, overseeing, and permitting the violative policies and/or practices described herein.

## FLSA Coverage

27.     At all relevant times, The Vault, including Defendant Mealey and Does 1-50, were "employers" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

28.     At all relevant times, The Vault, including Defendant Mealey and Does 1-50, have been and are employers within the meaning of the FLSA because they (1) have the power to hire and fire Gomez and the other Dancers, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate(s) and method(s) of payment, and (4) are the individuals responsible for maintaining employment records.

29.     At all relevant times, The Vault was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

30.     At all relevant times, The Vault, including, Defendant Mealey and Does 1-50, are an "enterprise" within the meaning of the FLSA because they are persons who perform related activities for a common business purpose, *inter alia*, managing, operating, running, and/or supervising an adult cabaret establishment where Gomez and the other Dancers are employed as dancers/entertainers.

31.     At all relevant times, The Vault was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as alcoholic beverages, food items, cleaning supplies, and otherwise use mechanisms for interstate commerce such as credit card terminals, phones, computers, and online music subscription services—that have been moved in or produced for interstate commerce.

32.     At all relevant times, The Vault had an annual gros volume of sales made or business done of not less than $500,000 per year.

33.     At all relevant times, Gomez and the other Dancers were The Vault's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

34.     At all relevant times, Gomez and the other Dancers were engaged in commerce or in the production of goods/services for commerce.

35.    The Vault treated the Dancers as employees and unilaterally dictated the pay practices applicable to the Dancers, as well as the other employment practices, work rules, and conditions of work for the Dancers.

36.    The Vault's misclassification of the Dancers as independent contractors does not alter their status as employees for purposes of the FLSA or, alternative, the TMWA.

37.    The Vault uniformly decided the Dancers would not be paid any wages and would instead only be paid through tips provided by The Vault's customers.

38.    The Vault applied this illegal no-wages pay scheme to the Dancers regardless of any alleged individualized factors, such as which manager/supervisor oversaw their work or which shift they worked on a given workday.

39.    As a result of The Vault's uniform no-wages pay scheme, the Dancers (including Gomez) did not receive minimum wages for any of their hours worked.

40.    As a result of The Vault's uniform no-wages pay scheme, Gomez and the other Dancers did not receive premium overtime wages when they worked more than 40 hours in a workweek.

41.    The Vault's misclassification scheme and uniform no-wages pay scheme therefore violates the FLSA's minimum wage and overtime provisions.

## Facts

42.     The Vault operates an adult cabaret club in Houston, Texas.

43.     The Vault describes itself as a "strip club"—specifically, "Not Your Average Houston Strip Club."[1]

44.     The Vault's "performers are the best in Houston – period."[2]

45.     Upon information and belief, Defendant Mealey is the primary manager at The Vault.

46.     In that capacity, Defendant Mealey operates, manages, runs, and/or supervises the work performed by Gomez and the other Dancers.

47.     Upon information and belief, Defendants Does 1-50 report directly to Defendant Mealey.

48.     Upon information and belief, Defendant Mealey has the power to direct and control Defendants Does 1-50's actions in their dealings with Gomez and the other Dancers.

49.     Upon information and belief, Defendant Mealey possesses the power to hire and fire the managers below him at The Vault Gentlemen's Club.

50.     Upon information and belief, Defendant Mealey possesses the power to hire and fire exotic dancers/performers at The Vault like Gomez and the other Dancers.

51.     Upon information and belief, Defendant Mealey, in his position as the highest-ranking managerial employee at The Vault, has control over The Vault's finances.

52.     Upon information and belief, Defendant Mealey is responsible for paying The Vault's employees.

---

[1]  https://thevaulthouston.com/about/ (last visited Aug. 8, 2025).
[2]  https://thevaulthouston.com/about/ (last visited Aug. 8, 2025).

53.    Upon information and belief, Defendant Mealey exercises control over the operations at The Vault.

54.    Upon information and belief, in this capacity, Defendant Mealey acts directly or indirectly in the interests of The Vault in relation to the employees, including Gomez and the other Dancers.

55.    Defendant Mealey also has substantial control over the terms and conditions of Gomez's and the other Dancers' work as exotic dancers/entertainers.

56.    Defendant Mealey sets policies, rules, and practices at The Vault which Gomez and the other Dancers are expected to follow, including the policy classifying Gomez and the other Dancers as "independent contractors" rather than as employees and the policy mandating The Vault will not pay Gomez or the other Dancers any wages.

57.    Upon information and belief, Defendant Mealey also maintains Gomez's and the other Dancers' personnel records, including their 1099 tax forms, their application and onboarding documents, and other documents bearing upon Gomez's and the other Dancers' working relationship with The Vault.

58.    Does 1-50 were likewise managers/supervisory employees at The Vault who oversaw Gomez's and the other Dancers' work.

59.    Defendants Mealey and Does 1-50 are responsible for the day-to-day, direct management and supervision of the work performed by Gomez and the other Dancers.

60.    Defendants Mealey and Does 1-50 hire and fire dancers, make operational decisions about Gomez's and the Dancers' work, enforce club policies, rules, and practices at The Vault with

respect to Gomez and the Dancers, implement the decision not to pay any wages to Gomez and the Dancers, and maintain personnel records for Gomez and the Dancers.

61.    Gomez was employed by The Vault under the FLSA and/or TMWA as an exotic dancer/entertainer within the 3 years before the filing of this Complaint.

62.    Gomez worked on a regular basis for The Vault from approximately February 2025 to July 2025.

63.    Since February 2025, Gomez typically worked 4-to-5 days per week and approximately 8-to-10 hours per workday (an overall average of 32-to-50 hours per workweek).

64.    Gomez did not receive any wages from The Vault during her employment.

65.    Gomez worked for The Vault as an exotic dancer/entertainer after being permitted or invited to work there and was not paid at either the Federal minimum wage or the Texas state law minimum wage. This happened during every shift and workweek that Gomez worked for The Vault.

66.    Similarly, the other Dancers are not paid either at the federally-mandated or Texas state law-mandated minimum wage rate for any of their time worked as exotic dancers/entertainers for The Vault.

67.    In fact, Gomez and the other Dancers are required to pay, and did pay, money to The Vault for the privilege of working as exotic dancers at the club, generally in the form of a "house fee"

68.    Gomez and the other Dancers were also required to pay other amounts to The Vault in order to work there, generally in the form of fines or other fees paid to The Vault and its employees.

69.     On at least one occasion during the statutory period, Gomez finished a workday at The Vault with negative earnings; that is, she made less in tips than what she paid to The Vault in fees to dance at the club.

70.     Gomez and the other Dancers are compensated exclusively through tips from The Vault's customers.

71.     When customers pay for private dances using a credit/debit card run on The Vault's credit card processing system, The Vault keeps a portion of those tips that should otherwise go to Gomez and the other Dancers.

72.     For example, if a customer purchases a $300 private dance with a Dancer and pays for that service using their credit card, The Vault typically keeps $100 of that amount for itself and remits the remaining $200 to the Dancer who provided the private dance service.

73.     The Vault controls which customers are allowed to enter the club on any given workday, thereby exercising control over Gomez's and the Dancer's opportunity to earn compensation through tips generated from those customers.

74.     In contrast, Gomez and the other Dancers have no say in which customers are allowed to enter The Vault on a given workday.

75.     The Vault does not directly pay wages to Gomez or the other Dancers for any hours worked.

76.     The Vault also requires Gomez and the other Dancers to share their tips with The Vault's non-tip-earning employees, including but not limited to managerial employees such as Defendant Mealey, disc jockeys, "house moms," and valets.

77.    The Vault also takes a portion of Gomez's and the other Dancers' tips after they perform certain dances for patrons. These amounts are not recorded in The Vault's gross sales receipts and are not distributed back to the Dancers. As alleged, no wages are provided to the Dancers.

78.    The Vault illegally classifies Gomez and the other Dancers as "independent contractors" rather than as employees under the FLSA or TMWA.

79.    However, at all relevant times, Gomez and the other Dancers are The Vault's employees.

80.    The Vault, including Defendants Mealey and Does 1-50, hire/fire, supervise, direct, discipline, schedule, and perform all other duties generally associated with that of an employer with regard to Gomez and the other Dancers.

81.    Gomez and the other Dancers rely on The Vault for work and compensation.

82.    Gomez and the other Dancers do not require any specialized skillset to do their jobs at The Vault.

83.    There is no prior experience, education, or training required to be hired as a dancer/entertainer at The Vault.

84.    Gomez and the other Dancers do not substantially invest in the tools and equipment required to complete the overall job for which they were hired at The Vault.

85.    Aside from purchasing small items like makeup and clothing, Gomez and the other Dancers largely just show up at The Vault and perform.

86.    Rather, The Vault incurs the large-scale business and operating expenses like marketing, payroll, real estate, lighting and music equipment, food and alcohol, and other equipment.

87.    The Vault sets the hours at the club, which in turn determines the limits on when Gomez and the other Dancers can work.

88.    The following non-exhaustive list further demonstrates Gomez's and the other Dancers' status as employees under the FLSA or TMWA:

    a.    The Vault, including Defendants Mealey and Does 1-50, requires Gomez and the other Dancers to clock in and out using the club's point-of-sale system (or, at least, a paper timesheet) each workday;

    b.    The Vault, including Defendants Mealey and Does 1-50, force Gomez and the other Dancers to pay "house/door fees" to dance in the club, generally ranging between $35 to $100 for the night depending on the night and time of shift;

    c.    The Vault, including Defendants Mealey and Does 1-50, set the price for private dances (a minimum of $300) and VIP room services—if the transaction was run on credit card, the club would keep one-third of the fee;

    d.    The Vault, including Defendants Mealey and Does 1-50, track, or at the very least estimate, the amount of tips Gomez and the other Dancers earn each workday and input those estimated amounts into The Vault's point-of-sale system;

    e.    The Vault, including Defendants Mealey and Does 1-50, also require Gomez and the other Dancers to disclose the amount of tips they make in a given workday in the point-of-sale system;

    f.    The Vault, including Defendants Mealey and Does 1-50, made the decision not to pay any wages to Gomez and the other Dancers;

    g.    The Vault provides Gomez and the other Dancers with music, stages, poles, and extensive lighting necessary for Gomez and the other Dancers to perform their exotic dancing/entertaining services;

    h.    The Vault mandates, encourages, and/or expects that Gomez and the other Dancers pay managers (including Defendant Mealey and Does 1-50), DJs, house moms, and valet workers a portion of the tips Gomez and the other Dancers earn from their dances;

    i.   The Vault requires Gomez and the other Dancers to check in with the DJ at the beginning of each shift;

    j.   The Vault requires Gomez and the other Dancers to report to the stage when the DJ calls for them to appear;

    k.   The Vault, including Defendants Mealey and Does 1-50, imposes a certain dress code requirements on Gomez and the other Dancers, such as requiring them to wear heels, requiring them to style their hair and makeup a certain way, and disallowing them from wearing flat-soled shoes;

    l.   The Vault often instructs Gomez and the other Dancers to change their attire or appearance to suit The Vault's tastes and rules;

    m.   The Vault, including Defendants Mealey and Does 1-50, audition dancers such as Gomez and the other Dancers to decide whether or not to hire them (the main consideration for hiring performers like Gomez and the other Dancers is their physical attractiveness);

    n.   Defendants Mealey and Does 1-50 are responsible for hiring and firing all employees of the club—the dancers, DJs, security personnel/bouncers, managers, and others;

    o.   The Vault employs Gomez and the other Dancers for several months, if not years, at a time;

    p.   Gomez and the other Dancers constitute the workforce without which The Vault could not provide its adult entertainment services; and

    q.   Gomez's and the other Dancers' services are integral to The Vault's central operations, *i.e.*, The Vault's customers come to the club to see entertainers like Gomez and the other Dancers dance.

89.    As a matter of economic reality, Gomez and the other Dancers are The Vault's employees.

90.    Gomez and the other Dancers are not exempt from the minimum wage requirements under the FLSA or the TMWA.

91.    The Vault's method of paying (or, in this case, not paying) Gomez and the other Dancers in violation of the FLSA and/or the TMWA is and was willful and not based on a good faith and reasonable belief that their conduct complies with the FLSA and/or the TMWA.

92.     The Vault misclassifies Gomez and the other Dancers as "independent contractors" with the intent to avoid paying them in accordance with the FLSA and/or the TMWA.

93.     Instead of paying Gomez and the other Dancers wages, The Vault requires Gomez and the other Dancers to earn compensation solely through the tips provided by The Vault's customers.

94.     For example, Gomez worked for The Vault as a dancer/entertainer from approximately February 2025 to July 2025.

95.     As a dancer/entertainer, Gomez's primary responsibilities included provided cabaret services to The Vault's customers.

96.     Throughout her employment with The Vault, Gomez typically worked 8-to-10 hours per workday, for 4-to-5 days per workweek (or 32-to-50 hours per week, on average).

97.     Gomez worked in accordance with the rules and guidelines set by The Vault.

98.     The Vault paid Gomez no wages, not even minimum wage of $7.25 per hour (or a tip-credit wage of $2.13 per hour plus tips).

99.     Despite knowing Gomez regularly worked more than 40 hours in a week, The Vault did not pay her overtime wages.

100.    Instead, The Vault required Gomez to pay **The Vault** for the privilege of working as a Dancer in the form of a "house fee."

101.    The amount of the "house fee" changed depending on the day and hour Gomez would start, typically ranging between approximately $35 to $100 per night. The later a dancer started in the night, the higher the house fee would typically rise.

102.    The Vault also required, instructed, and/or expected Gomez to share the tips she received with The Vault's other employees who do not customarily receive tips, including managers like Defendants Mealey and Does 1-50, DJs, house moms, and valets.

103.    As such, on top of paying Gomez no wages, The Vault was responsible for improperly reducing the amount of compensation Gomez was allowed to keep from her work.

104.    Like Gomez, the other Dancers are paid no wages, are not paid overtime wages when they work over 40 hours in a workweek, are required to pay out-of-pocket to work at The Vault, and are required to share their tips with non-tip-earning employees of the club.

105.    Despite knowing the Dancers work copious hours, and occasionally work overtime hours, The Vault does not pay them any wages.

## Collective Action Allegations

106.    Gomez incorporates all other paragraphs by reference.

107.    Like Gomez, the other Dancers are uniformly victimized by The Vault's illegal misclassification scheme, no-wages scheme, "pay to work" scheme, and mandatory tip-sharing scheme.

108.    Other Dancers worked with Gomez and indicated they performed similar work and were subject to The Vault's same misclassification policy, the same no-wages policy, the same "pay to work" policy, and the same tip-sharing policy.

109.    Based on her experience with The Vault, Gomez is aware the Vault's various illegal policies were imposed on the Dancers.

110.    The Dancers are similarly situated in the most relevant respects.

111.    Even if Dancers worked different hours or under different supervisors, these differences do not matter for the purposes of determining their entitlement to minimum wages and overtime pay.

112.    The only relevant inquiry here is whether the Dancers were misclassified as "independent contractors" and were not paid minimum wages.

113.    Therefore, potentially individualized issues do not prevent collective treatment.

114.    The Vault's uniform classification scheme and no-wages scheme renders Gomez and the Dancers similarly situated for the purposes of determining their right to minimum wage and overtime pay.

115.    The Vault's records reflect the number of days and/or hours the Dancers worked each week.

116.    Or, if The Vault's records do not reflect the accurate number of hours worked by the Dancers, such hours can be determined from other sources, including representative proof, point-of-sale system evidence, security records, or other common evidence.

117.    The back wages and other compensatory damages owed to Gomez and the other Dancers can be calculated using mathematical formulas applied to such common/representative evidence.

118.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to The Vault's records or representative proof, and there is no detraction from the common nucleus of liability facts.

119.    Therefore, the issue of damages does not preclude collective treatment.

120.    Gomez's experiences are therefore typical of the experiences of the other Dancers.

121.    Gomez has no interest contrary to, or in conflict with, the other Dancers that would prevent collective treatment.

122.    Like each Dancer, Gomez has an interest in obtaining the unpaid wages owed under federal and/or Texas law.

123.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

124.    Absent a collective action, many Dancers will not obtain redress for their injuries and The Vault will reap the unjust benefits of violating the FLSA and/or the TMWA.

125.    Further, even if some of the Dancers could afford individual litigation, it would be unduly burdensome to the judicial system.

126.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Dancers' claims.

127.    Gomez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

128.    As part of its regular business practices, The Vault intentionally, willfully, and repeatedly violated the FLSA and/or the TMWA with respect to the Dancers.

129.    The Vault's illegal misclassification scheme, no-wages scheme, "pay to work" scheme, and/or tip-sharing scheme deprive Gomez and the other Dancers of the minimum wages and overtime wages they are owed under the FLSA and/or the TMWA.

130.    There are many similarly situated Dancers who have been denied wages owed in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

131.    The Dancers are known to The Vault, are readily identifiable, and can be located through The Vault's business and personnel records.

### The Vault's Wage-and-Hour Violations Are Willful and/or Done in Reckless Disregard of the FLSA/TMWA

132.    Gomez incorporates all other paragraphs by reference.

133.    The Vault, including Defendants Mealey and Does 1-50, knew it controlled Gomez's and the other Dancers' method of compensation.

134.    The Vault, including Defendants Mealey and Does 1-50, knew it controlled Gomez's and the other Dancers' schedules through the operating hours of the club.

135.    The Vault, including Defendants Mealey and Does 1-50, knew it subjected Gomez and the other Dancers to various work rules, club rules, and other measures of control in performing their jobs.

136.    The Vault, including Defendants Mealey and Does 1-50, knew it prohibited Gomez and the other Dancers from straying from The Vault's rules, procedures, and other protocols in performing their job duties.

137.    The Vault, including Defendants Mealey and Does 1-50, knew it did not require Gomez and the other Dancers to possess any specialized skillset to do their jobs as dancers/entertainers.

138.    The Vault, including Defendants Mealey and Does 1-50, knew Gomez's and the other Dancers' work was integral to The Vault's business operations as an adult cabaret.

139.    Without the exotic dancing/entertaining services provided by Gomez and the other Dancers, The Vault would not be an adult cabaret business at all. It would simply be a sports bar/restaurant.

140.    The Vault, including Defendants Mealey and Does 1-50, knew its investments in the infrastructure, overhead, tools, and equipment necessary for Gomez and the other Dancers to perform their jobs greatly outweighed any investment made by these workers.

141.    The Vault, including Defendants Mealey and Does 1-50, knew it did not hire Gomez and the other Dancers to work on a project-by-project basis.

142.    The Vault, including Defendants Mealey and Does 1-50, knew Gomez and the other Dancers relied on it for work and compensation.

143.    The Vault, including Defendants Mealey and Does 1-50, knew it controlled Gomez's and the other Dancers' opportunity for profit and loss.

144.    Thus, The Vault, including Defendants Mealey and Does 1-50, knew, should have known, or recklessly disregarded whether, as a matter of economic reality, Gomez and the other Dancers were The Vault's employees.

145.    Nonetheless, The Vault, including Defendants Mealey and Does 1-50, misclassified Gomez and the other Dancers as "independent contractors."

146.    The Vault's, including Defendants Mealey and Does 1-50, decision to misclassify Gomez and the other Dancers as independent contractors was neither reasonable, nor was it made in good faith.

147.    The Vault, including Defendants Mealey and Does 1-50, knew it was subject to either the FLSA's or the TMWA's minimum wage and overtime provisions.

148.    The Vault, including Defendants Mealey and Does 1-50, knew the FLSA or the TMWA requires it to pay non-exempt employees, including Gomez and the Dancers, minimum wages of at least $7.25, free and clear of encumbrances, for all hours worked up to 40 in a workweek.

149.    The Vault, including Defendants Mealey and Does 1-50, knew the FLSA or the TMWA requires it to pay non-exempt employees, including Gomez and the Dancers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

150.    The Vault, including Defendants Mealey and Does 1-50, knew Gomez and each Dancer worked hours for which they received no wages.

151.    The Vault, including Defendants Mealey and Does 1-50, knew Gomez and the other Dancers were required to pay money to The Vault in order to work a given workday, thereby forcing them to start out their workday with "negative" earnings.

152.    The Vault, including Defendants Mealey and Does 1-50, knew Gomez's and the other Dancers' only form of compensation for their work was tips from The Vault's customers.

153.    The Vault, including Defendants Mealey and Does 1-50, knew Gomez and the other Dancers were required, pressured, or expected to share their tips with The Vault's managers, DJs, security personnel, and other non-tip-earning employees.

154.    The Vault, including Defendants Mealey and Does 1-50, knew Gomez and the other Dancers occasionally worked over 40 hours in at least one workweek during the 3 years before this Complaint was filed.

155.    The Vault, including Defendants Mealey and Does 1-50, knew it did not pay Gomez or the other Dancers any wages, including minimum wages or overtime wages, for the hours they worked at The Vault.

156.    Thus, The Vault, including Defendants Mealey and Does 1-50, knew it was violating the FLSA and/or the TMWA.

157.    The Vault's, including Defendants Mealey and Does 1-50, decision not to pay wages to Gomez and the other Dancers was neither reasonable, nor was it made in good faith.

158.    The Vault, including Defendants Mealey and Does 1-50, knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA and/or the TMWA.

159.    The Vault, including Defendants Mealey and Does 1-50, knowingly, willfully, and/or in reckless disregard carried out its illegal misclassification scheme, no-wages scheme, "pay to work" scheme, and tip-sharing scheme which systematically deprived Gomez and the other Dancers of wages earned for their hours worked in violation of the FLSA and/or TMWA.

**Count I**
**Failure to Pay Minimum Wages and Overtime Wages Under the FLSA**

160.    Gomez incorporates all other paragraphs by reference.

161.    Gomez brings her FLSA claim as a collective action on behalf of herself and the Dancers pursuant to 29 U.S.C. § 216(b).

162.    At all relevant times, The Vault was subject to the FLSA because it was (and is) an "employer" within the meaning of the FLSA.

163.    At all relevant times, The Vault employed Gomez and the other Dancers as its covered "employees" within the meaning prescribed by the FLSA.

164.    The FLSA requires employers such as The Vault to allow Gomez and the other Dancers to keep all tips and gratuities received from customers.

165.    As set forth above, The Vault fails to pay Gomez and the other Dancers at hourly rates in compliance with the FLSA's minimum wage requirements.

– 21 –

166.    Without legal excuse or justification, The Vault keeps and/or assigns to management (as well as others employed by The Vault who do not customarily make tips from customers) tips and gratuities received by Gomez and the other Dancers which rightfully belong to Gomez and the Dancers.

167.    As alleged above, The Vault's practice of collecting funds in the form of "house fees," retaining portions of tips when customers pay the Dancers using a credit/debit card, and other fines from exotic dancers like Gomez and the other Dancers also violates the FLSA.

168.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate or the required overtime rate are applicable to The Vault, Gomez, or the other Dancers.

169.    The Vault violated, and is violating, the FLSA by failing to pay Gomez and the other Dancers any wages (including minimum wages) for their hours worked.

170.    The Vault violated, and is violating, the FLSA by failing to pay Gomez and the other Dancers overtime compensation at rates not less than 1.5 times their regular rates of pay, based on all remuneration, for all hours worked in excess of 40 in a workweek.

171.    The Vault violated, and is violating, the FLSA by forcing Gomez and the other Dancers to pay money for the privilege of working at The Vault.

172.    The Vault's unlawful conduct harmed Gomez and the other Dancers by depriving them of minimum wages, overtime wages, and other monies that rightfully belong to Gomez and the Dancers.

173.    Accordingly, The Vault owes Gomez and the other Dancers minimum wages, free and clear of any encumbrances, for all hours worked up to 40 in a workweek.

174.    The Vault likewise owes Gomez and the other Dancers overtime wages at 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

175.    The Vault likewise owes Gomez and the other Dancers reimbursement for all "house fees," misappropriated tips, and other monies taken from these workers—such compensation is owed to Gomez and the other Dancers in order to bring their wages paid to $0 up from a negative amount, before The Vault must start paying minimum wages and overtime wages free and clear of encumbrances.

176.    Because The Vault knew, or showed reckless disregard for whether, its various wage-and-hour schemes violated the FLSA, The Vault owes Gomez and the other Dancers these wages and compensatory damages for at least the past 3 years.

177.    The Vault is also liable to Gomez and the other Dancers for an amount equal to their unpaid wages and compensatory damages as liquidated damages.

178.    Gomez and the other Dancers are also entitled to recover all reasonable attorneys' fees, expenses, and costs incurred in this Action.

## Count II
### Unlawful Tip Sharing Under the FLSA

179.    Gomez incorporates all other paragraphs by reference.

180.    Gomez brings this claim as a collective action on behalf of herself and the Dancers pursuant to 29 U.S.C. § 216(b).

181.    As set forth above, The Vault's failure to allow its exotic dancers to retain all of their tips by requiring them to share tips with The Vault's non-tip-earning employees, such as managers, DJs, security personnel, and others, violates the FLSA, 29 U.S.C. § 203(m).

182.    As such, The Vault is required to reimburse Gomez and the other Dancers for all amounts in tips they received, but were improperly required to share with The Vault and/or The Vault's employees who do not customarily receive tips.

183.    The Vault is also liable to Gomez and the other Dancers for an equal amount of such compensatory damages as liquidated damages.

184.    Gomez and the other Dancers are also entitled to recover all reasonable attorneys' fees, expenses, and costs incurred in this Action.

<u>**COUNT III**</u>
**FAILURE TO PAY MINIUM WAGES AND OVERTIME WAGES UNDER THE TMWA**

185.    Gomez incorporates all other paragraphs by reference.

186.    The Vault engages in a pattern, policy, and/or practice of violating the TMWA, as detailed above, by misclassifying Gomez and the other Dancers as independent contractors, not paying them wages, requiring them to pay money to work at the club, and requiring them to improperly share their tips with The Vault's other non-tip-earning employees.

187.    If the FLSA's minimum wage and overtime provisions set forth in 29 U.S.C. §§ 201, *et seq.*, and its implementing regulations, do not apply to The Vault and otherwise do not protect Gomez and the other Dancers, then Gomez and the other Dancers are alternatively entitled to such unpaid wages pursuant to the TMWA, Tex. Lab. Code §§ 62.001, *et seq.*

188.    At all relevant times, Gomez and the other Dancers are and were employees of The Vault within the meaning of Tex. Lab. Code § 62.005(5).

189.    At all relevant times, The Vault employs and has employed Gomez and the other Dancers within the meaning of Tex. Lab. Code § 62.002(4), (6).

190.    The Vault engages in a policy and/or practice of failing to pay Gomez and the other Dancers at the applicable minimum wage for all hours The Vault suffered or permitted them to work.

191.    The Vault likewise engaged in a policy and/or practice of failing to pay Gomez and the other Dancers at the applicable overtime wage, *i.e.*, 1.5 times their regular rates of pay, for all hours The Vault suffered or permitted them to work over 40 in a workweek.

192.    As a result of the minimum wage and overtime violations, Gomez and the other Dancers have suffered damages in an amount to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation owed pursuant to Tex. Lab. Code §§ 62.201, *et seq.*

193.    The other Dancers are entitled to participate in this collective action by submitting their written consents to sue pursuant to Tex. Lab. Code § 62.203.

## Count IV
### Unjust Enrichment

194.    Gomez incorporates all other paragraphs by reference.

195.    The Vault is and has been unjustly enriched at the expense of Gomez and the other Dancers by refusing to pay for work performed and by requiring Gomez and the other Dancers to pay The Vault for the privilege of working in the form of fees, fines, and tip-outs.

196.    The Vault knowingly and/or intentionally accepts the benefits of the work performed by Gomez and the other Dancers during their shifts worked, despite The Vault's policy and practice of failing to pay for such work due to The Vault's decision to improperly classify Gomez and the other Dancers as "independent contractors."

197.    In particular, The Vault receives the benefits of the labor and services provided by Gomez and the other Dancers for The Vault's customers, but does not pay Gomez and the other Dancers any wages for such labor and services.

198.    Moreover, The Vault improperly requires Gomez and the other Dancers to pay money to The Vault and The Vault's employees in the form of fees, fines, and/or tip-outs.

199.    Such wrongful conduct demonstrates bad faith and undue advantage on The Vault's part.

200.    It would be unjust and inequitable for The Vault to retain the benefit of the unpaid work performed by Gomez and the other Dancers, as well as for The Vault to retain the illicit funds obtained from Gomez and the other Dancers in the form of fees, fines, and tip-outs those employees were required to pay to The Vault and/or The Vault's employees.

201.    The Vault should be ordered to disgorge all ill-gotten benefits to Gomez and the other Dancers.

202.    Gomez is also entitled to declaratory relief finding The Vault was unjustly enriched.

203.    Gomez and the other Dancers are also entitled to attorneys' fees and costs under this claim pursuant to Texas Civil Practice and Remedies Code § 37.009.

## Jury Demand

204.    Gomez demands a trial by jury.

## Relief Sought

WHEREFORE, Gomez, individually and on behalf of the other Dancers, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) and/or Tex. Lab. Code § 62.203 be sent to the Dancers allowing them to join this Action by filing a written notice of consent;

b. An Order finding that The Vault violated the FLSA;

c. An Order finding that The Vault violated the FLSA willfully;

d. Alternatively, an Order finding The Vault violated the TMWA;

e. Alternatively, an Order finding The Vault violated the TMWA willfully;\

f. An Order finding The Vault committed unjust enrichment against Gomez and the other Dancers;

g. An Order finding The Vault, including Defendants Mealey and Does 1-50, liable to Gomez and the other Dancers for unpaid minimum wages, overtime wages, and other compensatory damages owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages and other compensatory damages;

h. In the alternative, an Order finding The Vault, including Defendants Mealey and Does 1-50, liable to Gomez and the other Dancers for unpaid minimum wages, overtime wages, and other compensatory damages owed under the TMWA, plus liquidated damages in amount equal to their unpaid wages and other compensatory damages;

i. A Judgment against The Vault awarding Gomez and the other Dancers all their unpaid wages, liquidated damages, compensatory damages, and any other penalties available under the FLSA or, in the alternative, the TMWA;

j. Disgorgement of The Vault's, including Defendants Mealey and Does 1-50, ill-gotten gains as described herein;

k.  An equitable accounting to identify, locate, and restore Gomez and the other Dancers

    with all compensatory damages they are due, with interest thereon at the highest rates

    allowable by law;

l.  An Order awarding attorneys' fees, costs, and expenses;

m.  Pre- and post-judgment interest at the highest applicable rates; and

n.  Such other and further relief as may be necessary and appropriate.


Dated: August 12, 2025                          Respectfully submitted,


                                                /s/ William M. Hogg
                                                William M. Hogg (Federal ID No. 3060906)
                                                Texas State Bar No. 24087733
                                                California State Bar No. 338196
                                                **Laurel Employment Law APC**
                                                808 Wilshire Boulevard, Suite 200
                                                Santa Monica, California 90401
                                                Tel: (323) 285-3161
                                                Fax: (323) 551-9319
                                                william@laurelemploymentlaw.com

                                                *Attorney for Gomez & the Dancers*